_____

SHEAWN SMITH,

                         Plaintiff,                         **DECISION & ORDER**

                -vs-

                                            **12-CV-6035-CJS**

TIMOTHY DONAHER, *et al.*,

                         Defendants.

_____

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Sheawn Smith<br>Altona Correctional Facility<br>555 Devils Den Rd., P.O. Box 3000<br>Altona New York, 12910 |
| For Defendants: | Brian E. Marianetti, Esq.<br>Deputy County Attorney<br>307 County Office Building<br>39 West Main Street<br>Rochester New York, 14614<br><br>Hillel Deutsch , A.A.G.<br>New York State Attorney General's Office<br>144 Exchange Blvd., Suite 200<br>Rochester New York, 14614 |

## INTRODUCTION

**Siragusa, J.** Now before the Court are Plaintiff's Motion for Default Judgment, ECF No. 15, appointment of counsel, ECF No. 18, Reconsideration, ECF No. 29, and summary judgment, ECF No. 30, and Defendants' Motions to Dismiss the Amended Complaint, ECF Nos. 14 & 16, pursuant to the Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Plaintiff's motions are denied, and Defendants' motion is granted.

## BACKGROUND

Plaintiff alleged several constitutional claims against government officials who were involved in his underlying criminal case, including judges, prosecutors, public defenders and jail superintendents, for malicious prosecution, denial of due process, and denial of access to the courts. On March 26, 2012, The Honorable Michael A. Telesca of this Court issued an Order dismissing, with prejudice, the claims against every judge, prosecutor, and public defender; and dismissing without prejudice, as premature, the claims for denial of due process and malicious prosecution. Further, Judge Telesca granted Plaintiff leave to file an amended complaint addressing his claims concerning access to the courts.

Plaintiff's Amended Complaint was filed pursuant to 42 U.S.C. § 1983 on April 26, 2012, against New York State's commissioner of correction, Thomas Beilein ("State Defendant") and three municipal employees: Monroe County Sherriff Patrick O'Flynn ("O'Flynn"), Monroe County Jail Superintendent Ronald Harling ("Harling"), and Monroe County Jail Captain John Lapira ("LiPari"[1]) (collectively, "County Defendants"). In this pleading, Plaintiff alleges that Defendants denied him his right of access to the courts, free speech, and due process. In accordance with Judge Telesca's Order, the Court will only consider whether Plaintiff's right to court access was violated. *See* Order 14, Mar. 26, 2012, ECF No. 8.

---

[1] In his acknowledgement of service, John LiPari pointed out that he was incorrectly sued as John Lapira. The Court will use the correct spelling of his name.

Plaintiff was represented by a Public Defender during his underlying criminal proceedings, but chose to file a habeas corpus petition *pro se.* On November 29, 2011, December 20, 2011, and December 26, 2011, Plaintiff requested[2] that the Monroe County Jail ("MCJ") provide him with photocopies of various documents to be attached to his habeas corpus petition, and that the petition then be mailed. *See* Am. Compl. Exs. B, C, & E, ECF No. 10-1. Since he was represented by an attorney during his underlying criminal proceedings, the first time that Plaintiff requested free photocopying, LiPari responded that he should contact his attorney. *See* Am. Compl. Ex. B, ECF No. 10-1. However, Plaintiff did not have an attorney at that time and was acting *pro se*. Subsequently, Plaintiff unintentionally happened to come face-to-face with LiPari and explained to him how he no longer had an attorney and needed the copies for his habeas petition. LiPari responded by telling Plaintiff to file another request, which Plaintiff did that same day. The following day, LiPari responded to Plaintiff's second request and told Plaintiff that he needed to contact the Public Defender's Office for further assistance. Am. Compl. Ex. C, ECF No. 10-1. Six days later, Plaintiff filed his third request, which was again denied—this time by Harling. *See* Am. Compl. Ex. E, ECF No. 10-1. In his response, Harling explained that MCJ provided inmates with stationary, writing utensils, and typewriters to make copies. *Id.*

On January 9, 2012, the MCJ received a grievance from Plaintiff regarding his request for free photocopying and mailing of his habeas corpus petition. *See* Am. Compl. Ex. F, ECF No. 10-1. On January 13, 2012, the Grievance Coordinator determined that Plaintiff had received the supplies mandated by Title 9 of New York State's Codes, Rules, and Regulations, N.Y. Comp. Codes R. & Regs. Tit. 9 §§ 7004.2,

---

[2] Plaintiff used an "Inmate Internal Communication Form" for each request.

7031.4(m), (n) (2012), that it was not MCJ's responsibility to provide copying services to inmates, and that Plaintiff was provided with the materials to make his own copies. *See* Am. Compl. Ex. F, ECF. No. 10-1. Further, the Grievance Coordinator determined that envelopes and postage for Smith's legal mailings involving criminal matters on which he was unrepresented would be provided by MCJ, and that included his habeas corpus petition. *See* Am. Compl. Ex. F, ECF No. 10-1.

On January 16, 2012, Plaintiff appealed the Grievance Coordinator's decision to the Chief Administrative Officer. His appeal was denied on January 23, 2012. *See* Am. Compl. Ex. F, ECF No. 10-1. Plaintiff appealed this denial as well, and on January 24, 2012, his appeal was forwarded to the Citizen's Policy and Complaint Review Council. *See* Am. Compl. Ex. F, EFC No. 10-1.

Plaintiff commenced this present action on January 18, 2012. Compl., ECF No. 1. Plaintiff filed a Motion for Default Judgment on August 10, 2012. Mot. For Default J., ECF. No. 15. On October 22, this Court issued an Order denying Plaintiff's Motion for Default Judgment against the County Defendants. Order, ECF. No. 27. Further, the Order directed the State Defendant to provide evidence that his Motion to Dismiss, which was filed on August 3, 2012, was filed timely. *Id.* State Defendant's Attorney responded to the Court's Order on October 23, 2012. *See* Deutsch Affirmation, ECF No. 28. Plaintiff then filed a Motion for Reconsideration of his Motion for Default Judgment on November 5, 2012. *See* Mot. For Default J., ECF No. 15; Mot. For Recons., ECF No. 29.

# STANDARDS OF LAW

*Standard under 12(b)(6) Motion*

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555. Further, the Supreme Court in, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), articulated that *Twombly* adopted "a two-pronged approach." *Id.* at 157–58.

First, threadbare recitals of the elements of a cause of action, which are supported by mere conclusory statements, do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although for the purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true, it "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. The Second Circuit observed that determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157–58.

When considering motions to dismiss a *pro se* complaint, a court "must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it]

suggests." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). This is especially true when dealing with *pro se* complaints alleging civil rights violations. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). However, when making this determination, a court must keep in mind that factual allegations must be enough to raise a right to relief above the speculative level." *Gradient Enters., Inc. v. Skype Techs. S.A.*, 848 F. Supp. 2d 404, 406–07 (W.D.N.Y. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 407.

## ANALYSIS

### *Default Judgment*

#### A. State Defendant

Federal Rule of Civil Procedure 55 requires that before a default judgment can be granted, the plaintiff must obtain a Clerk's entry of default. *See Kearney v. New York State Legislature*, 103 F.R.D. 625, 628 (E.D.N.Y. 1984). To obtain an entry of default, a plaintiff must show that the opposition failed to respond to the allegations in the time permitted for a response.

The United States Marshal mailed the Summons and Amended Complaint on July 5, 2012, along with a form to allow each defendant to acknowledge service in accordance with Federal Rule of Civil Procedure 4(d).[3] The State Defendant filed a Motion to Dismiss on August 3, 2012. Under Federal Rule of Civil Procedure 12(a)(1)(A)(ii), a party has sixty days to respond from the date that the waiver request was sent. Here, although there is no proof of service, there was a motion filed within the

---

[3] This situation occurred prior to the Standing Order that was issued September 26, 2012, which now controls the method used to acknowledge service in most prisoner cases.

sixty day period that the State Defendant would have to waive personal service. Therefore, the State Defendant's Motion to Dismiss was timely, and Plaintiff's Motion for Default Judgment is denied.

### *B. Reconsideration*

Plaintiff alleges that Defendants failed to respond to his Amended Complaint within twenty-one days of receiving service of an order to respond pursuant to Federal Rule of Civil Procedure 12(a). Further, Plaintiff alleges that the County Defendants must have received the Summons and Amended Complaint before July 31, 2012, the date on the Acknowledgement of Service. However, under Federal Rule of Civil Procedure 4(d), a party has thirty days to timely waive service. The record shows that the Marshal mailed the documents on July 5, 2012, which makes the July 31, 2012, acknowledgement timely. Further, Defendants' Attorney timely filed a motion to dismiss on August 20, 2012–twenty days after the acknowledgment of service–therefore, no default could be entered against Defendants O'Flynn, Harling, or LiPari. Accordingly, Plaintiff's Motion for Reconsideration is denied.

## *42 U.S.C. § 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in federal statutes and the Constitution. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Civil liability is imposed under § 1983

when Additionally, a Plaintiff must show (or at this stage, plausibly allege) that a Defendant was personally involved in the deprivation of his rights.

### A. Official Capacity

Plaintiff makes all of his claims against the Defendants in their "official and individual capacity." Claims against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). The Eleventh Amendment prohibits a plaintiff from commencing an action for damages against a State in federal court. "This bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). With regard to "official capacity", the Supreme Court stated the following in *Kentucky v. Graham*:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Graham*, 473 U.S. at 165–66 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

Defendants in the present action include the State Defendant who is Chairman of the New York State Commission of Correction, and County Defendants who are employees of the Monroe County Sherriff's Office: Monroe County Sherriff O'Flynn, Monroe County Jail Superintendent Harling, and Monroe County Jail Captain LiPari. The Commission of Correction is an executive agency of New York State. Any claim

that is brought against a state employee in his or her official capacity is a claim that is unequivocally brought against New York State. Because the State is immune from any suit for damages in federal court, State Defendant's motion to dismiss is granted as to Plaintiff's claims against him in his official capacity.

Conversely, the Eleventh Amendment does not necessarily afford protection to County Defendants in their "official capacity." The Eleventh Amendment extends to States and state officials in appropriate circumstances, *Edelman v. Jordan*, 415 U.S. 651 (1974), but it does not extend to counties and similar municipal corporations. *See Lincoln County v. Luning*, 133 U.S. 529, 530 (1890); *Moor v. County of Alameda*, 411 U.S. 693, 717–21 (1973). If a court determines that an agency is an "arm of the state," then the agency is protected by the Eleventh Amendment; however, if a court determines that an agency is a municipal corporation or other political subdivision, then the Eleventh Amendment cannot apply because the agency does not qualify as "one of the United States." U.S. Const. amend. XI. The answer depends, at least in part, on the nature of the entity that was created by state law. Under New York State Law, a county "is a municipal corporation comprising the inhabitants within its boundaries and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as may be imposed or conferred upon it by law." N.Y. County Law § 3 (McKinney 2012). From this definition alone, it is clear that in New York State a county is not considered to be an "arm of the state." *See Northern Ins. Co. of New York v. Chatham County, Ga.*, 547 U.S. 189 (2006) (discussing "arm-of-the-state" test). Therefore, the claims against the County Defendants in their official capacities do not violate the Eleventh Amendment.

Bringing a claim against a municipal employee in his or her official capacity is in effect a claim against the municipality directly. In *Monell v. The Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held that Congress "intended municipalities and other local government units to be included among those persons to whom § 1983 applies." This means that municipalities can be "sued directly under § 1983 for monetary, declaratory, or injunctive relief" if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* Additionally, a municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690–91. However, the Supreme Court further held that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. As long as a municipality "receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Here, Plaintiff fails to make any allegation that pertains to the existence of a policy or custom of the municipality that caused his alleged constitutional deprivation. There is nothing to support a contention that the actions of the County Defendants, which allegedly deprived him access to the courts, were acts that were pursuant to a policy or custom of Monroe County. On the contrary, Plaintiff's allegations amount to the speculation that the County Defendants failed to act according to the policy for

photocopying services under Directive 4483 and 2788. *See* Plaintiff's Affirmation Opposing Motion to Dismiss ¶ 8. Accordingly, County Defendants' motion to dismiss is granted as to Plaintiff's claims against them in their official capacities.

### *B. Personal Involvement*

To sue a government official in his personal capacity in a § 1983 action, "it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right." *Id.* at 166. Liability of that official, however, is based on his or her personal involvement. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Adhering to the Second Circuit's interpretation, a defendant is personally involved if he or she was a direct participant, or failed to remedy an alleged wrong after he or she learned of it, or created a policy or custom where unconstitutional practices occurred, or was grossly negligent in managing subordinates. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Regarding the standard for personal involvement, this Court, in *Bryant v. County of Monroe*, No. 09-0CV-6415-CJS, 2010 WL 4877799, at *3 (W.D.N.Y. Nov. 22, 2010), held in accordance with the Supreme Court's 2009 decision in *Ashcroft*: "Because vicarious liability is inapplicable to . . . 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Further, the Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the

photocopying services under Directive 4483 and 2788. *See* Plaintiff's Affirmation Opposing Motion to Dismiss ¶ 8. Accordingly, County Defendants' motion to dismiss is granted as to Plaintiff's claims against them in their official capacities.

### *B. Personal Involvement*

To sue a government official in his personal capacity in a § 1983 action, "it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right." *Id.* at 166. Liability of that official, however, is based on his or her personal involvement. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Adhering to the Second Circuit's interpretation, a defendant is personally involved if he or she was a direct participant, or failed to remedy an alleged wrong after he or she learned of it, or created a policy or custom where unconstitutional practices occurred, or was grossly negligent in managing subordinates. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Regarding the standard for personal involvement, this Court, in *Bryant v. County of Monroe*, No. 09-0CV-6415-CJS, 2010 WL 4877799, at *3 (W.D.N.Y. Nov. 22, 2010), held in accordance with the Supreme Court's 2009 decision in *Ashcroft*: "Because vicarious liability is inapplicable to . . . 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Further, the Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the

Constitution." *Id.* at 677. Consequently, a government official will only be liable for his or her own misconduct, and not the misconduct of his or her subordinates. *Id.*

To appropriately determine liability, a court must analyze each of defendant's own conduct. Therefore, to state a claim against an individual defendant under § 1983, a plaintiff must allege facts demonstrating an individual's personal involvement in the alleged constitutional deprivation. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement must be supported by evidence that supports any of the following: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.

Here, Plaintiff has simply alleged in conclusory fashion that Beilein "failed to act or remedy the wrong" when the appeal was brought before him. However, no facts are alleged to support that allegation, and the Court cannot find any basis for a claim against Beilein. *See Sowell v. Chappius*, 695 F. Supp. 2d 16, 19 (W.D.N.Y. 2010); *Guarneri v. West*, 518 F. Supp. 2d 514, 518 (W.D.N.Y. 2007); *Barnes v. Henderson*, 490 F. Supp. 2d 313, 319 (W.D.N.Y. 2007). Therefore, Plaintiff's claims against State Defendant in his personal capacity are also dismissed.

Additionally, to plausibly plead a claim against O'Flynn, Plaintiff must allege either that O'Flynn had a hand in the alleged constitutional violation, or that he created a policy or custom under which the unconstitutional practices occurred. Plaintiff has not made any allegation in accordance with this requirement. Plaintiff's allegations against O'Flynn appear to be based entirely on his position at the top of the chain-of-command. However, a "plaintiff cannot base liability solely on [the defendant]'s supervisory capacity or the fact that he held the highest position of authority" within the relevant governmental agency or department. *Burgess v. Morse*, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003) (citing *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.")). Therefore, Plaintiff's claims against O'Flynn in his personal capacity are dismissed.

### *C. Access to the Courts*

The United States Constitution guarantees prisoners the meaningful right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). Prisoners must be afforded meaningful access to the courts to challenge unlawful confinement and constitutional violations. *Id.* The fundamental, constitutional right of access to the courts includes the derivative right of meaningful assistance by requiring prison authorities to assist inmates in the preparation and filing of meaningful legal papers. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Further, the Supreme Court stated that "indigent inmates must be provided at state expense with paper and pen to draft legal documents . . . and with stamps to mail them." *Id.* at 824–25.

This right, however, is not absolute and "prison officials may place reasonable restrictions . . . as long as those restrictions do not interfere with inmates' access to the courts." *Shell v. Brun*, 585 F. Supp. 2d 465, 468 (W.D.N.Y. 2008). "The right of access to the courts requires that prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement ... not be impeded from presenting those defenses and claims for formal adjudication by a court." *Bourdon v. Loughren,* 386 F.3d 88, 96 (2d Cir. 2004). Inmate access to the court must be "adequate, effective, and meaningful." *Bounds,* 430 U.S. at 822.

"[T]o succeed on an access to the courts claim a prisoner must first demonstrate that an actual injury was suffered in order to have standing." *Melendez v. Haase,* No. 04 Civ. 00073, 2010 WL 5248627, at *7 (S.D.N.Y. Dec. 15, 2010) (citing *Benjamin v. Fraser,* 264 F.3d 175, 185 (2d Cir.2001)). If a plaintiff establishes that the defendant "took or was responsible for actions that 'hindered his efforts to pursue a legal claim,'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)), *cert. denied*, 525 U.S. 823 (1998), then an "actual injury" occurred. *See Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir.2001)), (quoting *Lewis*, 518 U.S., at 351) (stating that an inmate's claim of inadequate access to the courts must show that a defendant's acts or omissions "'hindered his efforts to pursue a legal claim'—for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality."), *aff'd,* No. 11–1699, 2012 WL 1450021 (2d Cir. Apr. 27, 2012); *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y.1998) ("To state a constitutional claim, a plaintiff must make a

showing that he has suffered, or will imminently suffer, actual harm, that is, that he was hindered in his efforts to pursue a legal claim.").

A prison regulation may be valid even if the regulation impinges on an inmate's constitutional right, if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). This deferential standard "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (internal quotation & citation omitted). When determining whether a restriction is reasonable, a prisoner's right of access to the courts may be balanced against the State's legitimate interests—including budgetary concerns. A court must find a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Safley,* 482 U.S. at 89. In addition, "the governmental objective must be a legitimate and neutral one." *Id.* at 90. Courts should also consider whether there are alternative means of exercising the right that remain open to prison inmates and "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.*

In this case, Plaintiff alleges that his right to access to the courts was violated when the MCJ failed to provide him with free photocopying services for the documents related to his habeas corpus petition that he was pursuing *pro se.* MCJ's regulations afford pens, paper, and typewriters as the necessary supplies that are available to a prisoner who is preparing for a legal proceeding. Plaintiff contends that (1) the New

York State Department of Corrections Directives 4483 and 2788 apply to MCJ, and (2) that MCJ failed to comply with the Directives in regards to the appropriate photocopying procedure.

The directives establish guidelines not only for the correctional facility, but for the inmate as well. An inmate is not simply entitled to free photocopies. There is a certain procedure that must be followed. Under Directive 4483, "An inmate lacking sufficient funds may not receive photocopying services unless the Law Library Supervisor, in consultation with the Law Library Administrator or Counsel's Office, approves an advance for same." N.Y. DOCS Direction No. 4483 (Mar. 28, 2002).

Under the directives, an inmate who does not have the appropriate funds to pay for photocopying services must request an advancement.[4] To request an advancement, an inmate must fill out a Form IAS 2708.[5] An advancement will be authorized if "the specific documents being copied are required by the courts and cannot be replicated longhand, and the requested advance and the balance of unpaid previous advances for legal photocopies do not exceed $20." N.Y. DOCS Directive No. 2788 (Mar. 30, 2012).

In *Muhammad v. Hodge*, No. 07–CV–0232(Sr), 2010 WL 1186330, at *1–2, *5 (W.D.N.Y. March 24, 2010), this Court held that—at least for cases in the Second Circuit—an inmate "does not have a constitutional right to free copies and prison regulations that limit access to such copies are "reasonably related to legitimate penological interests." *Id.* at *5. The Southern District of New York relied on the Circuit's position when it determined that with "the amount of litigation carried on by prisoners,

---

[4] An advancement provides an inmate who has insufficient funds in their accounts with funds in the minimum amount necessary to pay a particular fee.

[5] This form "serves as authorization to proceed with collection and repayment of advances, and must be signed by the offender for . . . legal photocopies."

the provision of free copying services for legal papers could prove to be very costly, and to impose upon the State unnecessary financial expenditures." *Gittens v. Sullivan*, 670 F. Supp. 119, 123 (S.D.N.Y. 1987). The court held, "The State should not be forced to provide free access to copier machines for prisoner use when there is an acceptable, less costly substitute." *Id.* at 122. This position is consistent with the holding of other courts in the Second Circuit finding that Directive 4483 is constitutional. *Muhammad v. Hodge*, No. 07–CV–0232(Sr), 2010 WL 1186330, at *5 (W.D.N.Y. March 24, 2010); *Rivera v. Patnode*, No. 9:11–CV–0532 (MAD/ATB), at *3 (S.D.N.Y. March 26, 2012).

Plaintiff failed to offer any proof that he completed the requisite form requesting an advancement. Further, the MCJ's available copy supplies are sufficient to provide proper access to the courts. Plaintiff, though, maintains that it would take so much time to write out or type out every necessary copy of his Petition that there would not be enough time to for him to "research and perfect" the Petition. Pl.'s Am. Compl. ¶ 26, ECF No. 10. However, Plaintiff was not denied access to the courts merely because of the amount of time that it took to make the copies. For Plaintiff to demonstrate that the MCJ hindered his efforts to pursue his civil legal claim, he "must show that he encountered more than mere delay or inconvenience." *Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) *aff'd sub nom. Benjamin v. Fraser*, 264 F.3d 175 (2d Cir. 2001). The Supreme Court elaborated on what an inmate must show to demonstrate that his or her efforts to pursue a nonfrivolous civil claim have been "hindered":

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to

> bring before the courts, but was so stymied by inadequacies
> of the law library that he was unable even to file a complaint.

*Lewis,* 518 U.S. at 351. "In other words, if an inmate experienced delays in pursuing a civil claim, but files acceptable legal pleadings within court deadlines, he cannot claim that he was prejudiced by shortcomings in a prison facility's law library, because he has sustained no relevant actual injury." *Benjamin*, 102 F. Supp. at 164.

Moreover, Plaintiff has failed to show an actual injury due to the claimed denial. First, when Plaintiff appeared in front of the Honorable Joseph G. Nesser in the New York State Supreme Court, Seventh Judicial District, the proceeding was adjourned for thirty-one days. The adjournment was granted to give Plaintiff additional time to prepare his petition, since he could not file the appropriate documents on time because he did not have access to photocopying services and was required to personally write out or type every document that he wanted to submit. *See* Pl.'s Am. Compl. ¶ 18, ECF No. 10. Second, Plaintiff in fact filed his habeas petition with the Court on January 3, 2011, as well as served the opposing party with a copy of the petition. *See id.* ¶ 29 (Plaintiff alleged he was unable to include photocopies of important documents with this habeas corpus petition because of the restrictive rules of the Monroe County Jail, so he would present them to the court when he appeared on January 19, 2011). Third, the only other facts that Plaintiff provides in regards to his habeas petition are that he was supposed to appear before Judge John J. Ark on January 19, 2011, but he "was not on the court docket list that day." *Id.* ¶ 32. And then the following day (Jan. 20, 2011) Plaintiff sent, to Judge Ark and opposing counsel, additional "legal argument[s]" to help substantiate his Petition along with a letter that "explained his reason for being absence [sic] in court."

*Id.* ¶ *33.* Finally, the Plaintiff states that—barren of any facts as to why—he never received a response from either the court or opposing counsel. *Id.* ¶ 35.

Accordingly, when a Plaintiff fails to provide facts that "nudge[] [his] claims across the line from conceivable to plausible," *Gradient Enterprises, Inc. v. Skype Technologies S.A.*, 848 F. Supp. 2d 404, 406–07 (W.D.N.Y. 2012) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), It must be dismissed. Here, Plaintiff's claims fail because he does not allege, nor do the facts indicate, that the photocopying restrictions caused him any actual harm. Therefore, Plaintiff's right of access to the court claim must be dismissed.

**CONCLUSION**

Plaintiff's Motion for Default Judgment, ECF No. 15, is denied in its entirety, Plaintiff's Motion for Reconsideration, ECF No. 29, is denied, and Defendants' motions to dismiss, ECF Nos. 14 & 16, pursuant to Federal Rule of Civil Procedure 12(b)(6) are granted. Plaintiff failed to plead adequate facts to state a claim that plausibly entitles him to relief. The remaining motion for summary judgment, ECF No. 30, and motion to appoint counsel, ECF No. 18, are denied as moot. The Clerk is directed to enter judgment for Defendants and close this case.

IT IS SO ORDERED.

Dated: June 10, 2013
         Rochester, New York

      ENTER:      /s/ Charles J. Siragusa
                           CHARLES J. SIRAGUSA
                           United States District Judge